John E. **KASMEIER**, Plaintiff, Appellee,

v.

**CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY**, a corporation, Defendant, Appellant.

No. 247-70.

United States Court of Appeals, Tenth Circuit.

Jan. 18, 1971.

Rehearing Denied March 2, 1971.

---

Robert W. Pittman, Oklahoma City, Okl., for appellant.

Donald L. Horowitz, Atty., Dept. of Justice, Civil Div., Washington, D. C. (William D. Ruckelshaus, Asst. Atty. Gen., William B. Burkett, U. S. Atty., and Alan S. Rosenthal, Washington, D. C., on the brief), for appellee.

Before PICKETT, HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

Kasmeier brought this suit against his employer, Chicago, Rock Island & Pacific Railroad Company, to recover damages for vacation benefits that he alleges he is entitled to under the Universal Military Training and Service Act, 50 U.S.C. App. § 459.[1] The case was submitted to the trial court on stipulated facts, whereupon the court concluded that Kasmeier was entitled to vacation rights for 1968, and was awarded $222.14. The Railroad has appealed.

The stipulated facts follow. Kasmeier was employed by the Railroad as an extra laborer on July 14, 1961. By January 29, 1963, he had advanced to a regular car department laborer. From then until August 26, 1963, he was continuously employed by the Railroad, at

---

1. "(c) Service considered as furlough or leave of absence

(1) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was in-

ducted into such forces, and shall not be discharged from such position without cause within one year after such restoration.

(2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment."

which time he left to enter military service. On September 1, 1967, Kasmeier was honorably discharged from active military service and was reemployed by the Railroad on September 13, 1967. During 1967, appellee rendered fifty-three days of compensated service for appellant.

Since his return in 1967, Kasmeier has received benefits in accordance with the agreements in effect between the Railroad and the union representing appellee's craft. Appellee has participated in insurance and other benefits on terms at least as favorable as those provided by established rules and practices in effect on September 13, 1967, relating to employees on furlough or leave of absence. The complaint of Kasmeier is, however, that he should be treated, in regard to qualification for vacation in 1968, as if he had been rendering compensated service for the Railroad during the entire year of 1967, notwithstanding his absence for military service.

The Railroad refused to grant the demand for vacation with pay. They rely on the provisions of the collective bargaining agreement which requires that an employee must render 110 days of compensated service in the previous calendar year in order to qualify for a vacation.[2] Since Kasmeier worked only fifty-three days in 1967, the appellant urges that no vacation can properly be required.

Disposition of the sole issue depends entirely on the meaning of the language in 50 U.S.C. App. § 459(c). That language compels the Railroad to restore appellee to his former job "without loss of seniority" and to permit him "to participate in insurance and other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces. * * *"

There is no argument but that if the vacation rights appellee seeks to sustain are categorized as "other benefits," he must be denied recovery. The union agreement does not provide for vacation for employees on furlough or leave of absence unless they have rendered the requisite number of days of compensated service. Kasmeier contends that the vacation benefits ought to be denoted as a perquisite of "seniority" as that term is used in the Act.

The "seniority" provision has been construed to mean that "the returning veteran is to be treated as though he has been continuously employed during the period spent in the armed forces." Accardi v. Pennsylvania Railroad Company, 383 U.S. 225, 228–229, 86 S.Ct. 768, 771, 15 L.Ed.2d 717 (1966). Hence the "other benefits" limitation is not inscribed on perquisite of "seniority" and the latter cannot be denied or diminished. Appellant has no quarrel with this analysis of the statute but contends that under a proper application the benefits sought by Kasmeier are not perquisite of "seniority."

To bring himself within the scope of the protected "seniority" rights, appellee has relied on Accardi v. Pennsylvania

---

2. "ARTICLE III—VACATIONS, Section 1 * * *

(a) Effective with the calendar year 1965, an annual vacation of five (5) consecutive work days with pay will be granted to each employee covered by this Agreement who renders compensated service of not less than one hundred twenty (120) days during the preceding calendar year.

(b) Effective with the calendar year 1965, an annual vacation of ten (10) consecutive work days with pay will be granted to each employee covered by this Agreement who renders compensated service on not less than one hundred ten (110) days during the preceding calendar year and who has three (3) or more years of continuous service and who, during such period of continuous service renders compensated service on not less than one hundred ten (110) days (133 days in the years 1950–1959 inclusive, 151 days in 1949 and 160 days in each of such years prior to 1949) in each of the three (3) of such years, not necessarily consecutive."

Railroad Company, supra, and Eagar v. Magma Copper Co., 389 U.S. 323, 88 S. Ct. 503, 19 L.Ed.2d 557 (1967), rev'g 380 F.2d 318 (9th Cir. 1966). Appellant suggests that both of these decisions are distinguishable both on the facts and the legal issues posed to the Court, and resultingly are not binding on this court. We agree.

In the Accardi case, the employees were being laid off and were to be paid an amount to be computed on the total number of years of compensated service. Under the railroad's system, an employee with as few as seven select days of work during a year could credit that year as one of compensated service. As the Court noted, absolutely no distinction was made between a man that worked one day a month for seven months and one who worked 365 days. The argument was transparent and it was obvious to the Court that the severance benefits did not in fact depend on compensated service, but upon seniority. Under the facts of that case, time spent in the military was held to be a "seniority" benefit and credited as compensated service when figuring the severance pay.

In the process of discounting the argument of the railroad that the severance pay was based on actual total service rendered, the Court stated: "The term 'seniority' is not to be limited by a narrow, technical definition but must be given a meaning that is consonant with the intention of the Congress as expressed in the 1940 Act. That intention was to preserve for the returning veterans the rights and benefits which would have automatically accrued to them had they remained in private employment rather than responding to the call of their country."

Although, just as in the instant case, the employees of the Pennsylvania Railroad did not actually fulfill the annual compensated service requirement, that is the only factual similarity between the lawsuits. Moreover, the facts which caused the Supreme Court to uphold the argument of the employees in the Accardi case simply are not extant in the current suit. Whereas in Accardi the compensated service requirement was a mere label to obscure the real nature of the payments, in this controversy the 110 day requirement is not a mere façade to veil the true nature of the benefits; it is a legitimate, uniformly applied condition precedent to vacation benefits. That alone segregates Accardi from this case.

In a one sentence per curiam opinion, the Supreme Court in Eagar v. Magma Copper Co., supra, reversed the Ninth Circuit which had held that certain Magma employees were not entitled to recover holiday and vacation benefits. The collective bargaining agreement in effect granted paid vacations if an employee worked 75% of his available shifts during the prior year, and was employed by the company on his one-year anniversary date. To receive a paid holiday, an employee must have worked the day before and the day after and have been on the payroll continuously for three months prior to the holiday.

Eagar had fulfilled the work requirements in both instances, i. e., he had worked 75% of his available shifts the year prior to entering the armed forces, and he had worked the day before and the day after the claimed holidays after his return from military service. However, because he was not with the company on his one-year anniversary due to entering the military, and because he was not discharged in time to complete the three month tenure requirement prior to the holidays, the Ninth Circuit denied the requested relief.

Central to the Circuit's rationale was the thought that the claimed benefits were not perquisites of seniority and resultingly could be legitimately denied under the "other benefits" clause. Although the Supreme Court did not elaborate on the Circuit opinion, it appears to us that the error was in classifying the subject vacation and holiday benefits as "other benefits" when with the mere passage of time both rights would have automatically accrued to the employee.

Regarding the vacation and holiday benefits, the work requirements were fulfilled and all that was left in order to qualify was tenure—the passage of time. We believe that distinction sharply differentiates Eagar from Kasmeier. Whereas Eagar had met the compensated work requirements and thereby earned the benefits under the collective bargaining agreement, Kasmeier has not.

The Supreme Court does not hold in either Accardi or Eagar that a right or benefit, which would accrue only by rendering a specified number of compensated work days, must be considered a perquisite of seniority. Indeed, by negative implication, a benefit which does not accrue automatically with tenure is not within the scope of "seniority" as used in the Act. That is precisely this case.

Kasmeier argues that this construction of the statute discriminates against the returning veteran. He reasons that because a veteran cannot return in time to complete the 110 day requirement, and a non-veteran on a leave of absence might be able to, the former suffers from discrimination. The argument, besides exhibiting an internal inconsistency, is not relevant. If it can be hypothesized that some non-veteran on leave of absence may be able to return in time to complete 110 days' work, it can likewise be said that some veterans may be discharged early enough to earn the benefits. But more on point, the fact is that under our decision there is no discrimination. The uniformly applied regulation is that before anyone receives a paid vacation he must perform a specified minimum number of work days.

Parenthetically, although appellee does not suggest otherwise, we cannot conclude that the Act precludes provisions in collective bargaining agreements which impose legitimate, uniformly applied compensated work day requirements as a condition precedent to vacation benefits. As said in Dugger v. Missouri Pacific Railroad Company, 276 F.Supp. 496, 499 (S.D.Tex. 1967), aff'd

403 F.2d 719 (5th Cir. 1968): "Congress did not intend to take the employees' position at the bargaining table. The courts also have been careful not to invade the sanctity of labor-management relations."

If Kasmeier were to prevail herein, the discrimination would favor the veteran. For without meeting the collective bargaining agreement standards as non-veterans must do, the returning veteran could merely assert that military duty kept him too long to work the 110 days, and he would therefore be entitled to a paid vacation. To extend the argument but one step further, we see no reason why a veteran returning early in a given year could not also successfully make Kasmeier's argument and win vacation benefits for a year in which he rendered absolutely no work service. Kasmeier's contention contorts the meaning of "seniority" beyond even a liberal construction of the language.

One further item should be noted. During the calendar year 1963, Kasmeier worked days adequate to entitle him to a paid vacation in 1964. Although he did not take the usual five day leave in 1964 because he was in the armed forces, the Railroad paid him an amount equivalent to five work days. And during the years 1963 through 1967, appellee earned two and one-half days of vacation for each month he served in military service. Thus, appellant is not in the position of Magma Copper Company which denied its employees earned benefits, nor in the posture of Pennsylvania Railroad which attempted to employ a sham system to determine compensated service. In sum, we cannot agree that Kasmeier has been denied a perquisite of "seniority" as that term is used in the Act.

Our attention has been directed to the very recent case of Hollman v. Pratt & Whitney Aircraft, 435 F.2d 983 (5th Cir. 1970), wherein the vacation benefits of a returning veteran were granted over an attempted "seniority" and "other benefits" distinction. Although the result is contrary to the instant decision,

it is the variant facts of the case, not the inconsistent rationale, which creates the differing outcome. For even under our decision Hollman would have prevailed. There the claiming parties had met all the requirements for vacation benefits in the year of their induction except for one requiring them to be in the employment of the company on the final day of the subject calendar year. With the facts so closely akin to the Magma Copper case, the court ultimately made that case the basis for their decision. The only incongruency between the Fifth Circuit and the decision of the instant case rests on the interpretation of the Accardi case insofar as it either shades or erases the line between "seniority" and "other benefits." We continue to perceive a significant distinction between those cases in which benefits would automatically accumulate with the passage of time, such as Hollman's situation, and those cases in which more than a duration of time is required to collect the rights, such as Kasmeier's situation. On the facts of the case before us, we believe the distinction to be valid. Accordingly, Kasmeier's claim must be denied.

Reversed.