John P. **LOCAYNIA** et al., Plaintiffs-Appellants,

v.

**AMERICAN AIRLINES, INC.,** a corporation, Defendant-Appellee.

No. 24861.

United States Court of Appeals, Ninth Circuit.

March 17, 1972.

As Amended April 13, 1972.

Rehearing Denied May 30, 1972.

Asher W. Schwartz, New York City (argued), J. A. Darwin, San Francisco, Cal., O'Donnell & Schwartz, New York City, Darwin & Riordan, San Francisco, Cal., for plaintiffs-appellants.

**1254**

Carl J. Schuck (argued), George Christensen, of Overton, Lyman & Prince, Arthur H. Porche, Area Representative, Los Angeles, Cal., Arthur M. Wisehart, New York City, Robert L. Shelby, Asst. Reg. Administrator, San Francisco, Cal., for appellee.

Before CARTER and HUFSTEDLER, Circuit Judges, and BATTIN,* District Judge.

HUFSTEDLER, Circuit Judge:

Locaynia, Golden, and Specht filed an action against their employer, American Airlines ("American") to recover vacation pay claimed due them under the terms of a collective bargaining agreement and 50 U.S.C. § 459(b) and (c) (Universal Military Training and Service Act). They appeal from a summary judgment in favor of their employer.

Locaynia was hired on November 4, 1964, worked for the airline until he entered military service on May 22, 1965, and was reemployed on his return from the service on June 5, 1967. Golden was employed on March 29, 1965, entered the service on October 22, 1965, and was reemployed on October 16, 1967, after his separation. Specht was employed on April 27, 1964, entered the service on May 22, 1965, and was reemployed on June 12, 1967, when he had completed service.

Each appellant received his vacation benefits for the years 1964 and 1965. American refused to grant any of appellants' vacation benefits in 1967, the year of their reemployment. In 1968, Locaynia was given seven days paid vacation, and Golden received three days.

Appellants contend that each was entitled to ten days paid vacation in 1967 and 1968 in accordance with the terms of 50 U.S.C. § 459(b) and (c) [1] and articles 8(a) [2] and 18 [3] of the collective bargain-

---

* Honorable James F. Battin, United States District Court Judge for the District of Montana, sitting by designation.

1. In pertinent part, § 459 provides:

   "(a) Any person inducted into the armed forces under this title . . .

   "(b) . . . who, in order to perform such training and service, has left or leaves a position (other than a temporary position) . . .

   " . . . .

   "(B) if such position was in the employ of a private employer, such person shall—

   "(i) if still qualified to perform the duties of such position, be restored by such employer . . . to such position or to a position of like seniority, status, and pay;

   " . . . .

   "(2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with [the foregoing provisions] should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment."

2. Article 8, in pertinent part, provides:

   "(a) Employees hereunder shall become entitled to and receive vacation allowance in accordance with the following:

   "(1) As used herein the term 'year' is used to mean a calendar year.

   "(2) As of December 31 of each year, each employee hereunder who has had one (1) year or more of *continuous service* with the Company will be entitled to a vacation period of two (2) weeks (ten regular workdays) to be taken in the following year.

   "(3) As of December 31 of each year, each employee hereunder who has had five (5) years or more of continuous service with the Company will be entitled to a vacation period of three (3) weeks (fifteen regular workdays) to be taken in the following year." [Emphasis added.]

   " . . . .

   "(d) Vacation allowances shall not be cumulative and a vacation to which an employee becomes entitled on December 31 of any year shall be forfeited unless taken during the following year."

3. Article 18 says:

   "(a) The reemployment and seniority status of any employee hereunder, who, while in the active service of the Company entered the armed services or the Merchant Marine of the United States, shall be governed by the provision of the Selective Training and Service Act of 1948, as amended, or other applicable law.

ing agreement. American argues to the contrary, relying primarily on section 459(c) (1) [4] and article 8(e) [5] and article 17 [6] of the collective bargaining agreement. The narrow issue presented is this: Was this vacation pay a perquisite of seniority, as appellants claim, or was it within the category of "other benefits," as American contends? Resolution of the issue turns on the appropriate interpretation of Accardi v. Pennsylvania R. R. (1966) 383 U.S. 225, 86 S.Ct. 768, 15 L.Ed.2d 717 and Eagar v. Magma Copper Co. (1967) 389 U.S. 323, 88 S.Ct. 503, 19 L.Ed.2d 557.

In *Accardi* the Supreme Court noted that nowhere in the act is the term "seniority" defined, "but it derives its content from private employment practices and agreements. . . . The term 'seniority' is not to be limited by a narrow, technical definition but must be given a meaning that is consonant with the intention of Congress as expressed in the 1940 Act. That intention was to preserve for the returning veterans the rights and benefits which would have automatically accrued to them had they remained in private employment rather than responding to the call of their country." (Accardi v. Pennsylvania R. R., *supra* 383 U.S. at 229–230, 86 S.Ct. at 771. *See also* Hollman v. Pratt & Whitney Aircraft (5th Cir. 1970) 435 F.2d 983, 989; Morton v. Gulf, Mobile & Ohio R. R. (8th Cir. 1969) 405 F.2d 415, 419; Edwards v. Clinchfield R. R. (6th Cir. 1969) 408 F.2d 5.) Referring to the "other benefits" clause, the Court observed that "it is enough to say that we consider that it was intended to add certain protections to the veteran and not to take away those which are granted him by § 8(b) (B) and the other clauses of § 8(c)." (Accardi v. Pennsylvania R. R., *supra* 383 U.S. at 232, 86 S.Ct. at 773; *See also* Hollman v. Pratt & Whitney Aircraft, *supra* 435 F.2d at 986–987; Morton v. Gulf, Mobile & Ohio R. R., *supra* at 405 F.2d 419–420.)

*Eagar* was a per curiam reversal of this court's decision in Magma Copper Co., San Manuel Division v. Eagar (9th Cir. 1967) 380 F.2d 318 in which we held that vacation pay was not an attribute of seniority, but a fringe benefit, adopt-

---

"(b) Time spent on military leave shall count as time worked for purposes of seniority, [status, and] wage rates within the employee's classification and vacation.

"(c) An employee granted a leave of absence to go on a tour of duty with the National Guard or other reserve unit shall accrue length of service for pay purposes for the period of such leave."

4. 50 U.S.C. § 459(c) (1) states:
"(1) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) . . . shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration."

5. Article 8(e) provides:
"(e) An employee hereunder who takes a leave or leaves of absence which exceeds or the total of which exceeds sixty (60) calendar days during any calendar year shall have his vacation allowance to which he becomes entitled on December 31 of that year reduced by one (1) workday for each thirty (30) calendar days of said leave or the total of such leaves exceeds sixty (60) days if he has less than five (5) years of service with the Company, by one and one-half (1½) workdays . . . ."

6. Article 17 provides:
"(a) When the requirements of the service will permit, an employee hereunder may be granted a leave of absence for a period not in excess of ninety (90) days. When such leaves are granted, the employee shall retain and shall continue to accrue seniority during such leave.

"(b) When the requirements of the service will permit, such leave or leaves may be extended for additional periods of not to exceed ninety (90) days for each such leave when approved by the Company in writing."

ing the language of Siaskiewicz v. General Electric Co. (2d Cir. 1948) 166 F. 2d 463, 465–466:

" 'Since vacation rights are not pay unless they are for work actually done, and since they are not merely a perquisite of seniority, they must fall under the heading of "other benefits." Hence, under the language of the Act, appell[ees] must be treated like non-veteran employees on furlough or leave of absence. But non-veteran employees of [Magma] who were on leave of absence . . . would not be entitled to vacation pay for that year. Therefore, appell[ees] are not so entitled. . . .' " (380 F.2d at 321.)

We read the Supreme Court's summary reversal of *Eagar* as an explicit rejection of American's contention.[7] Accordingly, the judgment is reversed with directions to enter judgment in favor of appellants.

Dissenting Opinion.

BATTIN, District Judge:

This case involves the application of 50 U.S.C. App. § 459(b) and (c)[1] to

vacation pay. The three appellants were employed by appellee. After continuous employment, all three were inducted into the military service in 1965. Each applied for return to appellee's employment within ninety days of the termination of his active duty status in 1967. All three were reemployed that same year.[2]

Appellants were paid by appellee for vacation time accrued by them under the collective bargaining agreement in 1964 and 1965, when they left to enter the military. Appellee allowed appellants vacation pay for the work year 1967, in accordance with the collective bargaining agreement, considering appellants' 1967 military service time as a leave of absence, for purposes of determining the number of vacation days to which appellants were entitled.

It was stipulated by the parties that the maximum of vacation days to which appellants were entitled under the bargaining agreement was ten. This is based on their length of service, including military service, with appellee. Thus, appellee concedes that, had the addition of military service time to length of serv-

---

7. The dissenters' opinion (per Douglas, J.), 389 U.S. 323, 325, 88 S.Ct. 503, 19 L.Ed.2d 557, reinforces our construction of the per curiam opinion. The Fifth, Sixth, and Eighth Circuits have reached similar conclusions: Hollman v. Pratt & Whitney Aircraft, *supra*, 435 F.2d 983; Edwards v. Clinchfield R. R., *supra*, 408 F.2d 5; Morton v. Gulf, Mobile & Ohio R. R., *supra*, 405 F.2d 415. The Tenth Circuit is to the contrary: Kasmeier v. Chicago, Rock Island & Pacific R. R. (1971) 10 Cir., 437 F.2d 151.

1. 50 U.S.C.App. § 459
"(b) *Reemployment rights*
In the case of any such person who, in order to perform such training and service, has left or leaves a position (other than a temporary position) in the employ of any employer . . .
(B) if such position was in the employ of a private employer, such person shall—
(i) if still qualified to perform the duties of such position, be restored by

such employer or his successor in interest to such position or to a position of like seniority, status, and pay;
. . .
"(c) *Service considered as furlough or leave of absence*
(1) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, . . . ."

2.

| Name | Hired | Left for Military | Rehired |
| --- | --- | --- | --- |
| Locaynia | November 4, 1964 | May 22, 1965 | June 5, 1967 |
| Golden | March 29, 1965 | October 22, 1965 | October 16, 1967 |
| Specht | April 27, 1964 | May 22, 1965 | June 12, 1967 |

ice caused the appellants to be in a category in which the vacation days allowed was greater than if military service time were not computed, they would be entitled to the greater number of vacation days under 50 U.S.C. App. § 459 (b). In other words, appellee admits that the maximum entitlement of vacation days rests upon seniority and that in this regard an employee's rights are determined with respect to his military service as though he had never left his employment to serve in the military.

From this point, however, appellee and appellants have different views of the meaning of the Act and the cases interpreting it. Appellee claims that under the collective bargaining agreement and Section 459(c) of the Act, appellants must earn their vacation by fulfilling a "work requirement" as set forth in the collective bargaining agreement.[3] Appellants, on the other hand, argue that Section 459(b) and (c) of the Act require that they be given full vacation time, even though they did not work one day that year.

It appears to me that the issue is whether the various requirements, which must be met to entitle an employee to vacation pay, are defined totally as attributes of seniority, or whether they are in part defined as seniority and in part defined as "other benefits" under Section 459(c). If the former is true, then the bargaining contract cannot affect the number of vacation days allowed, since Section 459(c) clearly states that an employee, rehired under Section 459(b), cannot lose any seniority rights due to his absence for military service. If, on the other hand, vacation pay entitlement, with regard to the requirement that it be earned, is something other than an attribute of seniority, then the "other benefits" clause of Section 459(c), which requires that the conditions of the collective bargaining agreement be met, must apply.

Two United States Supreme Court decisions appear to be the key to the interpretation of Section 459 as it applies to vacation pay: Accardi v. Pennsylvania R. Co., 383 U.S. 225, 86 S.Ct. 768, 15 L.Ed. 2d 717 (1966), and Eagar v. Magma Copper Co., 389 U.S. 323, 88 S.Ct. 503, 19 L.Ed.2d 557 (1967).

In *Accardi*, the Supreme Court stated that

"The term 'seniority' is not to be limited by a narrow, technical definition but must be given a meaning that is consonant with the intention of Congress as expressed in the 1940 Act [see 50 U.S.C. App. § 459(c) (2)]. That intention was to preserve for the returning veterans the rights and benefits which would have *automatically* accrued to them had they remained in private employment rather than re-

3. "Article 8(a). Employees hereunder shall become entitled to and receive vacation allowances in accordance with the following:

(2) As of December 31 of each year, each employee hereunder who has had one (1) year or more of continuous service with the Company will be entitled to a vacation period of two (2) weeks (ten regular workdays) to be taken in the following year.

(e) An employee hereunder who takes a leave or leaves of absence which exceeds or the total of which exceeds sixty (60) calendar days during any calendar year shall have his vacation allowance to which he becomes entitled on December 31 of that year reduced by one (1) workday for each thirty (30) calendar days of said leave or the total of such leaves exceeds sixty (60) days if he has less than five (5) years of service with the company . . . provided, however, no deduction from vacation allowance shall be made for leaves of absence granted due to injury sustained while on duty."

"Article 18—Military Leave

(a) The reemployment and seniority status of any employee hereunder, who, while in the active service of the Company entered the armed services or the Merchant Marine of the United States, shall be governed by the provisions of the Selective Training and Service Act of 1948, as amended, or other applicable law.

(b) Time spent on military leave shall count as time worked for purposes of seniority, wage rates within the employees' classification and vacation."

sponding to the call of their country." (Emphasis supplied.) 383 U.S. at 229–230, 86 S.Ct. at 771.

An examination of the facts in *Accardi* reveals that the appellants had been employed by the railroad in 1941 and 1942. They left this employment for varying periods to serve in the military during World War II and returned to the railroad's employment after completion of their military tours. In 1960, as part of the settlement of a labor dispute, the position of Fireman, which the appellants held, was abolished. Under the bargaining agreement, the railroad was to retain all firemen with twenty or more years seniority, but was able to discharge all firemen with less than twenty years seniority upon payment of severance pay.

Severance pay, under the bargaining agreement, was to be based on the length of "compensated service" with the railroad. However, compensated service of one month was defined as any month in which an employee worked one or more days. Compensated service of one year was defined as compensated service of twelve months "or a major portion thereof."

In determining their severance pay, the railroad did not allow the appellants credit for their military service on the theory that they had had no compensated service during that period. The appellants argued that this was contrary to Section 8 of the Selective Training and Service Act of 1940.

The Supreme Court rejected the argument of the railroad that the severance pay was not based on seniority and that therefore Sections 8(b) (B) and (c) were inapplicable to the case. The Court pointed out that employers and unions cannot use "transparent labels and definitions to deprive a veteran of substantial rights guaranteed by the Act." 383 U.S. at 229, 86 S.Ct. at 771. Hence, seniority must be given a broad interpretation.

In applying its broad interpretation of seniority to the facts in *Accardi,* the Court found that severance pay, contrary to the railroad's argument, was based on seniority and not on the actual total service rendered by the employee. The Court explained its reasoning as follows:

"As the Government points out, it is possible under the agreement for an employee to receive credit for a whole year of 'compensated service' by working a mere seven days. There would be no distinction whatever between the man who worked one day a month for seven months and the man who worked 365 days in a year. The use of the *label* 'compensated service' cannot obscure the fact that the real nature of these payments was compensation for loss of jobs. And the cost to an employee of losing his job is not measured by how much work he did in the past—no matter how calculated—but by the rights and benefits he forfeits by giving up his job. Among employees who worked at the same jobs in the same craft and class the number and value of the rights and benefits increase in proportion to the amount of seniority, and it is only natural that those with the most seniority should receive the highest allowances since they were giving up more rights and benefits than those with less seniority." (Emphasis supplied.) 383 U.S. at 230, 86 S.Ct. at 772.

On the basis of this language, it is clear that the Supreme Court has not ruled out the possibility that compensated service can be a valid requirement for an employee benefit, if it is not a mere label or subterfuge by which those veteran's rights which are in reality attributes of seniority are disregarded and denied. However, a careful examination of the particular right at issue must be made to determine whether it falls in the category of seniority or "other rights."

What then is the status of vacation pay? In January, 1966, this Court held that vacation pay was not covered by the seniority provisions of Section 459. A subsequent petition for rehearing, made on the basis that *Accardi* required a different result, was denied. Magma Copper Company, San Manuel Division v. Eagar, 380 F.2d 318 (9th Cir. 1967).

Under Magma's bargaining agreement, employees were entitled to vacation or vacation pay if:

1. They had been continuously employed by Magma for one year preceding the date of vacation application;
2. They had not had a vacation within that year;
3. They had worked at least 75% of the shifts available to them within that year; and
4. They were employed by Magma on the day the vacation began.

Moreover, the agreement provided that if an employee left Magma's employ for any reason, except layoff, before the annual determinative date, he was not entitled to a vacation. With regard to holiday pay, employees were not eligible unless they had been on Magma's payroll continuously for three months prior to the holiday.

Eagar was employed by Magma from March 12, 1958, to March 6, 1959, at which time he entered the military. When he left, he had worked more than 75% of his available shifts during the year March 12, 1958, to March 12, 1959. He returned to Magma on May 2, 1962, and worked the last shift before and the first shift after Memorial Day and Independence Day. He claimed vacation pay for the year beginning March 12, 1958, and holiday pay for the two holidays in 1962, discussed above.

Magma refused to pay vacation pay because Eagar was not employed at the end of the vacation-determining year as required. Holiday pay was refused becaused he was not employed for the period required, prior to the holiday. 380 F.2d at 320.

This court recognized in its initial opinion that a returning veteran

" 'steps back on [the "seniority escalator"] at the precise point he would have occupied had he kept his position continuously during the war.' Fishgold v. Sullivan Drydock & Repair, 328 U.S. 275, 284–285, 66 S.Ct. 1105, 1111,

90 L.Ed. 1230 (1946)." 380 F.2d at 320.

The Court, however, based on case authority before *Accardi*, defined seniority as "rights which automatically accrue as a direct incident of length of job tenure," and defined "other benefits" as " 'miscellaneous fringe benefits not usually regarded as part of "pay," "status," or "seniority." ' [Borges v. Art Steel Co., 246 F.2d 735 (2d Cir. 1957)]." 380 F.2d at 320–321.

The Court then adopted the language of Siaskiewicz v. General Electric Co., 166 F.2d 463, 466 (2nd Cir. 1948), which ruled that

" 'Since vacation rights are not pay unless they are for work actually done, and since they are not merely a perquisite of seniority, they must fall under the heading of "other benefits." Hence, under the language of the Act, appell[ees] must be treated like non-veteran employees on furlough or leave of absence. But non-veteran employees of [Magma] who were on leave of absence * * * would not be entitled to vacation pay for that year. Therefore, appell[ees] are not so entitled. To grant them such pay would be to discriminate in favor of them as veterans and against non-veteran employees.' " 380 F.2d at 321.

Finally, the Court held that the same rationale applied to the claim for holiday pay.

In denying the petition for rehearing, this court reaffirmed its position that vacation pay was not a seniority right and was therefore not affected by the Supreme Court decision in *Accardi*. Judge Madden, however, dissented. He believed that the denial of vacation pay and holiday pay was based on circumstances which brought the case directly under the rule of *Accardi*. It was his opinion that the distinction between seniority rights and other benefits was not the question, but rather the issue was whether the rights claimed " 'would have automatically accrued to them had they remained in their civilian jobs' in-

stead of entering the military service." 380 F.2d at 322.

In a *per curiam* decision, the Supreme Court reversed this court on the basis of *Accardi.* Eagar v. Magma Copper Co., *supra.* Justice Douglas wrote a dissent with which Justice Harlan and Justice Stewart concurred.

Although the majority of the Court did not explain just how *Accardi* required reversal, some insight can be garnered from the dissenting opinion. Mr. Justice Douglas recognized that Eagar had complied with the requirement that he must have worked 75% of the available shifts during the vacation-earning year to be eligible for a vacation. However, he was of the opinion that *Accardi* did not apply because the case involved "other benefits" rather than seniority.

On the surface then, it would appear that the majority of the Court has adopted the view that *all* aspects of vacation eligibility fall within the broad definition of seniority. However, in my opinion, this ignores the fact that Eagar had completed the substantive "work requirements" to qualify him for vacation pay. In other words, he had "earned" his vacation.

In effect, by denying him this benefit on the basis that he was not employed on the first day of the vacation-earning year, the Circuit Court allowed Magma to deny benefits guaranteed Eagar by the Act, "by the use of transparent labels and definitions." *Accardi, supra,* 383 U.S. at 229, 86 S.Ct. at 771.

Employment on the last day of the vacation-earning year has nothing to do with compensation for services rendered and clearly does not require treatment as an attribute of "other benefits." Once the vacation was substantively earned, it would "have automatically accrued to [Eagar] had [he] remained in private employment rather than responding to the call of [his] country." *Accardi, supra,* 383 U.S. at 229–230, 86 S.Ct. at 771.

Such a finding does not require that all attributes of vacation fall within "seniority, status, and pay." Nor does it foreclose the use of a valid work requirement before vacation time accrues.

The fact that seniority is to be given a broad definition was not meant to make it all-inclusive. This is demonstrated by the examination which the *Accardi* Court made of the "compensated service" provision in question. Had the Court intended that all compensated service requirements fall within the definition of seniority, this examination would have been unnecessary.

Instead, the Court required that, if a "compensated service" type requirement was only a facade being used to disguise a seniority benefit, it be interpreted as what in fact it was. This does not preclude the honest use of a "compensated service" type requirement in determining the accrued vacation pay of non-veterans and returning veterans.

If the requirement of American here were only that the employee be on the payroll one day per month for seven months to be entitled to vacation, the "work requirement" could be said to be merely a disguised seniority requirement under the broad *Accardi* definition of seniority. However, such is not the case. All American employees are entitled to a specified vacation time. In addition, they can take sixty days of leave during the earning year without jeopardizing this vacation time. If, however, more than sixty days leave of absence is taken, the employee forfeits a specified amount of vacation pay for each thirty-day leave increment in excess of the sixty days allowed.

This is not a hidden seniority right. Rather, it is a requirement that the employee earn his vacation. He is being given additional compensation for services actually rendered. If he does not render the required services, his pay is reduced accordingly. To find this requirement to be one of seniority would be to open the door to a finding that the fact of payment for work is within the definition of "seniority, status, and pay" and that the employee's salary or wage must be continued during the time he is

in military service. Clearly, such a result was not intended by Congress.

It might be argued that the reversal of the *Eagar* case with regard to the holiday pay requires that the appellants' position be successful here. I do not agree.

*Magma* required by the bargaining agreement that to be eligible for holiday pay, among other things,

"An employee must have been on the Company's payroll continuously for three (3) months prior to the holiday in question." *Magma, supra,* 380 F.2d at 320.

Regrettably, none of the opinions disclose how this requirement was interpreted. However, a reasonable interpretation of the requirement is that the employee merely appear on the payroll records once each pay period. If the employees were paid weekly, then twelve days work would satisfy this requirement with no distinction drawn between those working one day per week and those working every work day during the three-month period. Such a result clearly brings the facts within the interpretation of seniority by the *Accardi* Court.

The requirement may merely have meant that the employee had to have been employed at least three months before the holiday and not have quit between his first starting date and the holiday. Clearly in this case, the requirement would be one of seniority and not compensated service.

In addition, it can be argued that holiday pay requirements are merely a question of seniority. It is not *earned* by the employee but is *given* to him provided he meets certain requirements, such as length of service. The two requirements in Magma's bargaining agreement support this view. To be eligible for vacation pay, the employee was required to have worked 75% of available shifts, a substantive work requirement, and to be employed on the last day of the vacation-earning year, a seniority requirement. To be eligible for holiday pay, he merely had to be on the payroll continuously for the three months prior to the holiday and apparently to have worked the last shift before and the first shift after. No requirement is made that he have worked a specified number of shifts to be eligible for holiday pay.

Since Magma did not see fit, or was unable, to include such a work requirement in the holiday pay criteria, one is left with the conclusion that the three-month requirement was merely a seniority requirement and not a substantive work requirement.

For these reasons, therefore, I believe that the work requirement imposed by the bargaining agreement in the present case is just that—a substantive work requirement which must be met before vacation is due. Therefore, it does not fall within the seniority definition, as broadened in *Accardi*, but rather is within the classification of "other benefits" and must be ruled by that clause of 50 U.S.C.App § 459(c).

This interpretation of *Accardi* and *Magma* is not without support. On facts similar to those before us, the Tenth Circuit reached a decision similar to that reached by the court below in this case. There the work requirement was held to fall within the definition of "other benefits" and to thus be ruled by the bargaining agreement under § 459(c) (1). Kasmeier v. Chicago, Rock Island and Pacific Railroad Co., 437 F.2d 151 (10th Cir. 1971).

In Morton v. Gulf, Mobile & Ohio Railroad Company, 405 F.2d 415 (8th Cir. 1969), the court ruled that military service years had to be considered as employment years in determining the maximum vacation pay to which an employee was entitled. Clearly, this is a consideration of seniority and is covered by *Accardi* and *Fishgold*. The decision does not bear on the instant case, however, since it does not deal with a substantive work requirement which requires that an employee meet specified conditions precedent before he is eligible to receive any vacation at all.

Likewise in Edwards v. Clinchfield Railroad Company, 408 F.2d 5 (6th Cir. 1969), time spent in the service was held to be included as employment time in determining the length of vacation pay under the theory of *Accardi* and *Morton*.

In Hollman v. Pratt & Whitney Aircraft, 435 F.2d 983 (5th Cir. 1970), the circuit court affirmed a district court decision which awarded vacation pay to employees for the year in which they entered the service but denied them vacation pay for the years in which they were in the service.

In that case, Hollman left Pratt & Whitney's employ on December 4, 1964, to enter the service. He was denied vacation pay for the earning year 1964 because he had not fulfilled the bargaining contract terms which required that he be in the employ of Pratt & Whitney on December 31, 1964, or have returned to their employ before December 31, 1965. He, of course, could not comply with this requirement because he was in the service. Clearly, the case falls within the *Magma* case. The requirement in question was one of seniority and was not a substantive work requirement. Hollman had earned his vacation and being employed on December 31, 1964, or reemployed before December 31, 1965, had nothing to do with whether the vacation was earned.

It is of note that the district court allowed Hollman payment based on his gross earnings through December 4, 1964, and did not require that his wage be projected through December 31, 1964, for purposes of determining his vacation pay allowance. To be consistent with the contention of the instant appellants, that should have been done. If all the elements of vacation pay are to fall within the classification of seniority rights, clearly Hollman was entitled to vacation pay based on the assumption that he worked full time during the period in which he was in the military service.

The District Court as noted did not allow this. He was not given vacation pay for the period after December 4, 1964, when he left Pratt & Whitney's employ, for the whole of 1965, during which he was in the military service, nor for January 1, 1966, to November 28, 1966, during which he was in the military service.

It must be recognized, however, that in *Hollman* the only question before the circuit court was whether the trial court erred in allowing Hollman the vacation pay for the earning year 1964. Since Hollman apparently did not appeal the district court's decision, the questions regarding denial of vacation pay for the time actually spent in military service were not in issue.

These three decisions do not require the acceptance of appellants' argument in the instant case. Similarly, they do not prevent us from drawing a distinction between the various elements of vacation pay. Therefore, I would hold that in this case the work requirement with regard to vacation pay is substantive and falls under the classification of "other benefits" in 50 U.S.C.App. § 459(c) and that the appellants are bound by the terms of the bargaining contract in this regard.