Henry J. HOFFMAN, Jr., Plaintiff,
Appellant,

v.

BETHLEHEM STEEL CORPORATION,
Defendant, Appellee.

No. 72-1149.

United States Court of Appeals,
Third Circuit.

Argued March 1, 1973.

Decided April 3, 1973.

Robert E. Kopp, Civil Division, U. S. Dept. of Justice, Washington, D. C.,

Harlington Wood, Jr., Acting Asst. Atty. Gen., for plaintiff-appellant.

John McN. Cramer, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendant-appellee.

Before MARIS and ALDISERT, Circuit Judges, and GORBEY, District Judge.

## OPINION OF THE COURT

GORBEY, District Judge.

This action was initiated by Henry J. Hoffman, Jr., pursuant to the Military Selective Service Act of 1967[1] (the Act), to obtain unearned supplemental unemployment benefit (SUB) credit units. The appeal follows a non-jury trial at which judgment was entered in favor of the defendant, 335 F.Supp. 968.

The issue posed on this appeal is whether the appellant, a returning veteran, should be given SUB credits for the period of his military service. Appellant was initially employed by appellee on May 3, 1966, in a position which was not temporary. On July 29, 1966, the plaintiff was granted a military leave of absence, having been inducted into the armed forces effective August 4, 1966. When the plaintiff was honorably discharged on August 2, 1968, he made a timely application for re-employment. The plaintiff was reinstated to his former position on August 6, 1968. Shortly thereafter, the plaintiff was placed on lay-off status, he was recalled for a period from September 3rd through September 7th, and was once again laid off for almost all of the remainder of the year. As of September 7, 1968, the plaintiff had been credited with seven and one-half SUB credit units, which accrue under Bethlehem Steel's supplemental un-

employment benefit plan (the Plan) and are used at the rate of one credit unit per week of lay-off.

The Plan, which is designed to provide weekly benefits to augment state unemployment benefits, was established by a collective bargaining agreement between the defendant and the United Steel Workers of America, dated July 1, 1962. Under this Plan, the number of weeks for which covered employee receives benefits depends on the number of SUB credit units accrued. The formula by which an employee accrues credits, as set forth in paragraph 2.0 of the Plan, permits an employee to accrue one-half credit for each week "in which he has any of the following hours . . . . :

(a) hours work for the company,

(b) hours not worked for which he is paid, such as vacation hours or hours for which he received jury allowance,

(c) hours not worked and not paid for but which were lost because:

(1) he was performing his duties as a member of the grievance committee, or president, vice-president, recording secretary, financial secretary and/or treasurer of the local of the union which is his collective bargaining representative, or

(2) he was absent because of disability for which benefits are payable under Workmen's Compensation or Occupational Disease Law or the company program of insurance benefits."

On appellant's return from military service, the company determined that he was not to be given any credits for the period of time spent in the military service.[2] When Hoffman was laid off

---

1. 50 U.S.C.App. § 451 et seq.

2. Paragraph 9.2 of the Plan reads as follows:

   *"Military Service"*

   "If an employee enters the armed services directly from the employment of the company he shall, while in the service, be deemed for the purposes of

the plan to be on leave of absence and shall not be entitled to any benefit. Only the credit units credited to him at the time of his entry into such service shall be credited to him upon his reinstatement as an employee of the company with unbroken continuous service, except as may otherwise be required by law."

shortly after his return from military service, the company paid him SUB benefits based on the seven and one-half credits which he accrued between his first employment and his entry into the military service. The appellant challenges this determination, asserting that under 50 U.S.C. App. § 459 he must be deemed to have accrued SUB credits during his period of military service. It was stipulated that he would have accrued an additional forty-two and one-half SUB credits if he had continued to work regularly at Bethlehem instead of entering military service. After the company rejected Hoffman's contentions, he brought this action in the district court which entered judgment for the defendant.

In order to determine the appellant's rights under the Act, it is necessary to examine the interrelationship between sections 9(b) and 9(c).[3] The courts have consistently held that the statute treats two types of benefits: (1) "seniority, status and pay" and (2) "insurance and other benefits". Kasmeier v. Chicago Rock Island & Pacific RR Co., 437 F.2d 151 (1971); Accardi v. Pennsylvania RR Co., 383 U.S. 225, 86 S.Ct. 768, 15 L.Ed.2d 717 (1966); Magma Copper Co., San Manuel Division v. Eager, 380 F.2d 318 (1967), rev'd. on other grounds, 389 U.S. 323, 88 S. Ct. 503, 19 L.Ed.2d 557 (1968). Seniority benefits are protected by § 9(b)(B)(i).[4] Insurance and other benefits are protected by § 9(c).[5] Section 9(c) was intended to add certain protections to the veteran and not to take away those which are granted him by § 9(b)(B) and other clauses of § 9(c).[6] *Accardi, supra,* 383 U.S. at 232, 86 S.Ct. 868. The other benefits clause was added to the Act for the express purpose of entitling employees to receive, while in the service, such benefits as their employers accorded employees on leave of absence. *Accardi,* 383 U.S. at 231, 86 S.Ct. 768.

If the accrual of SUB credits is an "other benefit", appellant is entitled to no additional credits. The Plan specifically excludes employees on leave of ab-

---

3. These sections read in part as follows:

§ 9(b) [50 U.S.C.App. § 459(b)]

"(b) Reemployment rights.

In the case of any such person who, in order to perform such training and service, has left or leaves a position . . . and . . . makes application for reemployment within ninety days after he is relieved from such training and service . . .

. . . (B) If such position was in the employ of a private employer, such persons shall—

(i) if still qualified to perform the duties of his position, be restored by such employer or his successor in interest to such position or to a position of like seniority status, and pay;
. . ."

§ 9(c) [50 U.S.C.App. § 459(c)]

"(c) Service considered as furlough or leave of absence

(1) Any person who is restored to a position in accordance with the provisions of paragraph . . . (B) of subsection (b) shall be considered as having been on furlough or leave of absence during the period of training and service in the armed forces, shall be restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with each employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration.

(2) It is declared to be the sense of the Congress that any person who is restored to a position in the accordance with the provisions of paragraph . . . (B) of subsection (b) should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment."

4. 50 U.S.C.App. § 459(b)(B)(i).

5. 50 U.S.C.App. at § 459(c).

6. While *Accardi, supra,* refers to § 8(c), Section 8 of the 1940 Act was re-enacted as § 9 of the Selective Service Act of 1948, 62 Stat. 604, as amended 50 U.S.C. App. § 459.

sence from accruing benefits.[7] A returning veteran's rights under the Act are no greater than if he had been continuously employed during his military service. Fishgold v. Sullivan Dry Dock and Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946); Gauweiler v. Elastic Stop Nut Corp., 162 F.2d 448 (1947).

In determining an employee's "seniority", a returning veteran's rights are not limited to treating him as being on a leave of absence. The Supreme Court stated in *Accardi* that the intention of Congress "was to preserve for the returning veterans the rights and benefits which would have automatically accrued to them had they remained in private employment rather than responding to the call of their country." [383 U.S. at 229 and 230, 86 S.Ct. at 771.] The court in *Fishgold* recognized that the Act guaranteed the veteran against loss of seniority by reason of his absence and that "his service in the armed services is counted as service in the plant so that he does not lose ground by reason of absence." [8] (328 U.S. at 285, 66 S.Ct. at 1111)

■ This court has recognized that the veteran "is protected, while away, to the same extent as if he had been either *continuously on the job in the plant or* away on furlough or leave of absence for some personal reason." Mentzel v. Diamond, 167 F.2d 299 (3d Cir. 1948).

The issue therefore is whether the accrual of SUB credits are "seniority" or "other" benefits.

"The term 'seniority' is not to be limited by a narrow, technical definition but must be given a meaning that is consonant with the intention of Congress as expressed in the 1940 Act." *Accardi, supra.,* 383 U.S. at 229, 86 S.Ct. at 771. That intention as described in *Fishgold* was to insure that returning veterans would not be penalized by reason of their absence from their civilian jobs but rather "to gain by their service to their country an advantage which the law withheld from those who stayed behind." (328 U.S. at 284, 66 S.Ct. at 1111)

■ The trial court has properly observed there is a distinction between rights which accrue with the passage of time and those for which some further act is required. Those which accrue with the passage of time are seniority rights which are protected under § 9(b). Those for which some other act is required, such as days of work, are not seniority rights protected by § 9(b) and would not accrue after the veteran returns. *Kasmeier, supra.* Here the learned trial judge observed that Bethlehem's SUB benefits are accrued based on hours worked as spelled out in § 2.-0(c)(1)(ii) of the SUB plan. However, when that plan is analyzed, the same "bizarre results" are possible under Bethlehem's plan as were possible under *Accardi.* In *Accardi* the court noted absolutely no distinction was made between a man that worked one day a month for 7 months and one who worked 365 days. This fact made it obvious that severance benefits did not in fact depend upon hours work but upon seniority. Similarly, in Bethlehem's plan no distinction is made between an employee who works 1 hour during the week and one who works 40 hours during the week. Each would accrue one-half of a SUB credit. It is illogical to

---

7. Reference paragraph 9.2 of the Plan. The plan in *Accardi* had a similar provision which precluded employees on furlough or leave of absence from accruing benefits. (371 F.2d at 74)

8. This right was not questioned by the dissenting Justices in Eagar v. Magma Copper, 389 U.S. 323, 88 S.Ct. 503 (1968) (which reversed the court of appeals' denial of vacation benefits to a returning veteran) who stated: "In dealing with the seniority problems under a like statutory provision, we held that the employee is to be treated as if he kept his position continuously during his stint in the Army. . . . petitioners do not contest [the employer's] assertion that it does figure the length of vacation for returning servicemen as though they had been *constantly on the payroll* during the tour of duty in the military." [Emphasis added.]

say that a plan which permits the accrual of benefits to employees who worked 7 days out of 365 is based upon the passage of time while a plan which permits the accrual of benefits to an employee who works 1 hour out of 40 is based upon something more than the passage of time. In each, the employee receives credit for a full-time period regardless of the fractional part of the period which he works. This is not like *Kasmeier* where an employee only received the benefits when he worked the full period.

■ Accordingly, we find that the SUB credits accrued pursuant to this Plan are seniority rights and as such are protected by § 9(b). Appellant is therefore entitled to the forty-two and one-half additional credits which he would have earned but for his military service.

The decision of the district court will, therefore, be reversed.